# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |
|---|---|
| THE CLEVELAND CLINIC FOUNDATION 9500 Euclid Avenue, Cleveland OH 44195, and | CASE NO. 1:15 CV 2331 |
|  | JUDGE PATRICIA A. GAUGHAN |
| CLEVELAND HEARTLAB, INC. 6701 Carnegie Avenue, Suite 500 Cleveland, OH 44103 | **AMENDED COMPLAINT FOR PATENT INFRINGEMENT** |
| Plaintiffs, | (Jury Demand) |
| vs. |  |
| TRUE HEALTH DIAGNOSTICS LLC, 6170 Research Road Frisco, TX 75033 |  |
| Defendant. |  |

For their Amended Complaint against True Health Diagnostics LLC, The Cleveland Clinic Foundation and Cleveland HeartLab, Inc. state as follows:

## I.  JURISDICTION AND VENUE

1.      Counts I-V of this action arise under the Patent Laws of the United States, Title 35, United States Code. This Court has jurisdiction over Counts I-V under 28 U.S.C. § 1338(a).

2.      Venue is proper in this district under 28 U.S.C. §§ 1391(d) and 1400(b).

## II.  THE PARTIES

3.      Plaintiff The Cleveland Clinic Foundation ("CCF") is a non-profit business organized and existing under the laws of the State of Ohio, with a principal place of business located at 9500 Euclid Avenue, Cleveland, Ohio 44195.

4.      CCF is the owner of U.S. Patent No. 7,223,552 ("the '552 Patent"), U.S. Patent No. 7,459,286 ("the '286 Patent"), U.S. Patent No. 8,349,581 ("the '581 Patent"), U.S. Patent No. 9,164,095 ("the '095 Patent") and U.S. Patent No. 9,170,260 ("the '260 Patent") (Attached as Exhibits A, B, C, D and E).

5.      Plaintiff Cleveland HeartLab, Inc. ("Cleveland HeartLab") is a corporation organized and existing under the laws of the State of Delaware, and has a principal place of business located at 6701 Carnegie Avenue, Suite 500, Cleveland, OH 44103.  Cleveland HeartLab regularly does business in this judicial district including selling, advertising and marketing its products and services within in this district, as well as maintaining a lab for blood testing services.

6. Cleveland HeartLab is the exclusive licensee of the '552 Patent, the '286 Patent, the '581 Patent, the '095 Patent and the '260 Patent, which are owned by CCF.

7. Defendant True Health Diagnostics LLC ("True Health") is a limited liability corporation organized and existing under the laws of the State of Delaware, and has a principal place of business located at 6170 Research Road, Suite 211, Frisco, TX 75033.  True Health regularly does business in this judicial district by selling and offering products for sale in this district, including the test kits and lab services that infringe the '552 Patent, the '286 Patent, the '581 Patent, the '095 Patent and the '260 Patent.

8. Upon information and belief, True Health also retains and maintains a sales agent in this district.

## III. FACTUAL BACKGROUND

9. Physicians rely on lab tests to diagnose disease, guide treatment, and manage patient health risks. Particularly, blood tests are commonly used to test for Cardiovascular disease (CVD), which is the number-one killer of both men and women in the United States. While cholesterol is the most common test used to identify CVD risk, approximately 50 percent of people who have had a heart attack previously displayed normal cholesterol levels.   Thus, there has been a glaring need for a test that is easy to administer, like a cholesterol test, but that provides better predictive data.

10. In 2003, researchers at CCF developed a new test for CVD risk that analyzes inflammation of the blood vessels.  Inflammation is an actual symptom of CVD rather than a potential cause.  This innovative test is called Myeloperoxidase or MPO.  In order to protect its investment, CCF filed several patent applications relating to MPO and helped organize a group

of local and national investors and physicians to launch Cleveland HeartLab in 2009 to further MPO testing.

11.     Cleveland HeartLab, since its inception has worked to create and expand the market segment for MPO, to ensure proper use and quality of MPO testing and to continue MPO-related innovation.  Cleveland HeartLab's efforts have included ongoing medical and scientific studies, pursuit of FDA approvals and Medicare reimbursement status, development and implementation of stringent manufacturing and quality standards, creation of dedicated educational programs and assembling of a well-trained sales, marketing and educational team.

12.     As a result of these efforts, Cleveland HeartLab has grown from eight employees in 2009 to 140 employees today, including 30 employees dedicated to sales, support and education for MPO testing.

13.     The '552 Patent overcame two ex parte reexamination challenges before the USPTO, Control Nos. 90/009,501 and 90/009,744.  Specifically, Plaintiffs successfully argued that using MPO to assess CVD risk was novel and that the claims were not obvious over a prior method for measuring MPO, known as mean peroxidase index (MPXI). Studies proved that MPXI was not an accurate predictor of cardiovascular disease (CVD).

14.     The '552 Patent's claims include using MPO to asses CVD risk and "determining levels of [MPO] activity, [MPO] mass, or both," which were not known, well-known or routine as of the priority date of the '552 Patent.  The patent claims a specific application of MPO and not MPO itself.

15.     The '286 Patent's claims include using MPO to asses risk of an "adverse cardiac event within the next six months" and "comparing the level of a risk predictor . . . wherein said risk predictor is [MPO] activity, [MPO] mass, or a [MPO]-generated oxidation product, or any

combination thereof," which were not known, well-known or routine as of the priority date of the '286 Patent.  These patent claims a specific application of MPO and not MPO itself.

16.     The '581 Patent's claims include using MPO to asses risk of an "adverse cardiac event within the 6 months of presenting with chest pain" and "determining the level of a risk predictor . . . wherein said risk predictor is [MPO] activity, [MPO] mass, or a [MPO]-generated oxidation product, or any combination thereof," which were not known, well-known or routine as of the priority date of the '581 Patent.  The patent claims a specific application of MPO and not MPO itself. The '581 Patent issued after the Supreme Court's decision in *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 132 S. Ct. 1289 (2012).

17.     The '095 Patent was issued and mostly prosecuted after the Supreme Court's decision in *Mayo*.  During the prosecution of the '095 Patent, the USPTO specifically applied the *Mayo* case as well as examination guidelines based on that case.  Prosecution of the '095 Patent included about three years of negotiation between Plaintiffs and the USPTO over claim language in light of *Mayo* and the examination guidelines.  The USPTO found the issued claims to be patent-eligible subject matter and allowed the '095 Patent.  In the USPTO's Notice of Allowability (attached as Exhibit F), the USPTO decided that the issued claims of the '095 Patent are patentable subject matter and overcame a rejection based on 35 U.S.C. § 101 stating:

> Applicant supplemental amendment filed on 05/13/2015 has also overcome the rejection under 35 USC 101 which was the only remaining rejection in the prior OA of 12/23/2013. As was discussed in the previous OA, the claims set forth a relationship between elevated protein-bound nitrotyrosine and the need to administer a lipid lowering agent. However, the claim amounts to significantly more than the judicial exception because the detecting elevated protein-bound nitrotyrosine as determined by performing an ELISA on a serum or plasma bodily sample from the patient and administering a lipid lowering agent based on a determination that based on said elevated levels of protein-bound nitrotyrosine imposes meaningful limitations on the judicial exception and are not merely routine and conventional steps, taken as an ordered combination. (Ex. F, at 3.)

18.     The '095 Patent's claims include "performing an enzyme linked immunosorbent assay (ELISA) comprising contacting a bodily serum or plasma sample with a monoclonal anti-nitrotyrosine antibody," which was not known, well-known or routine as of the priority date of the '095 Patent.  The patent claims a specific application of MPO and not MPO itself.

19.     The '260 Patent was issued and mostly prosecuted after the Supreme Court's decision in *Mayo*.  During the prosecution of the '260 Patent, the USPTO specifically applied the *Mayo* case as well as examination guidelines based on that case.  Prosecution of the '260 Patent included about three years of negotiation between Plaintiffs and the USPTO over claim language in light of the *Mayo* and the examination guidelines.  The USPTO found the issued claims to be patent-eligible subject matter and allowed the '260 Patent.  In the USPTO's Notice of Allowability (attached as Exhibit G), the USPTO decided that the issued claims of the '095 Patent are patentable subject matter and overcame a rejection based on 35 U.S.C. § 101 stating:

> Applicant supplemental amendment filed on 05/13/2015 has also overcome the rejection under 35 USC 101 which was the only remaining rejection in the prior OA of 02/27/2014. As was discussed in the previous OA, the claim sets forth a relationship between elevated MPO activity and/or mass and the need to administer a lipid lowering agent. However, the claim amounts to significantly more than the judicial exception because the detecting elevated MPO levels as determined by performing an ELISA to determine MPO mass and a peroxidase activity assay to determine MPO activity on a serum or plasma bodily sample from the patient and administering a lipid lowering agent based on a determination that based on said elevated levels of MPO mass and/or activity imposes meaningful limitations on the judicial exception and are not more than a drafting effort designed to monopolize an exception (see analysis under the 2014 Interim Guidance on Patent Subject Matter Eligibility, issued December 2014, p. 21). While it was conventional in the art to determine elevated levels of the biomarkers in atherosclerotic lesions, determining elevated levels in the currently recited bodily samples were not known in the art and when also linked to the currently recited specific assays (ELISA to determine MPO mass and a peroxidase activity assay to determine MPO activity) as well as the step of administering a lipid lowering agent based on such elevated levels of MPO mass and/activity, the claim as a whole imposes meaningful limitations beyond generally linking the use of the judicial exception to a particular technological environment. (Ex. G, 3-4.)

20.     The '260 Patent's claims include "performing an enzyme linked immunosorbent assay (ELISA) comprising contacting a serum or plasma sample with an anti-MPO antibody and a peroxidase activity assay to determine MPO activity in the serum or plasma sample," which was not known, well-known or routine as of the priority date of the '260 Patent.  The patent claims a specific application of MPO and not MPO itself.

21.     Cleveland HeartLab commercializes MPO by performing MPO tests directly for physicians and hospitals as well as offering MPO testing to otherwise competing laboratories. Some of these labs send patients' blood samples to Cleveland HeartLab for analysis.  For others, Cleveland HeartLab manufactures and sells them high-quality MPO testing kits.  Cleveland HeartLab's MPO customers include, for example, Quest Diagnostics, one of the largest laboratory services companies in the United States.  In order to ensure quality control, Cleveland HeartLab imposes strict provisions on blood sample collection and has the right to reject specimens that were not properly collected.

22.     In July 2010, Cleveland HeartLab entered into a "Laboratory Services Agreement" with Health Diagnostics Lab ("HDL"), a large laboratory services company.  Under the Laboratory Services Agreement, Cleveland HeartLab performed all of HDL's MPO tests and reserved the right reject blood specimens that failed to meet Cleveland HeartLab's standards.

23.     During the summer of 2014, Chris Grottenthaler, CEO of Defendant True Health, contacted Cleveland HeartLab to discuss the potential purchase of MPO testing.  True Health's CEO subsequently visited Cleveland HeartLab for further discussions, but no agreement was ever reached.

24.     HDL filed for bankruptcy in June of 2015.  Shortly thereafter, HDL decided to put its assets up for sale via auction.

25.      In July of 2015, True Health placed a bid in the HDL bankruptcy auction for certain HDL assets.  In its bid, True Health expressly excluded Cleveland HeartLab's Laboratory Services Agreement with HDL for MPO testing.  The bankruptcy court finally approved True Health's bid on or about September 16, 2015.

26.      On or about September 14, Cleveland HeartLab CEO Jake Orville wrote a letter to True Health warning that any sale of MPO testing without authorization from Cleveland Heartlab would violate Cleveland HeartLab's patent rights.  Cleveland HeartLab received no response to this letter.

27.      In mid-October Cleveland HeartLab acquired a lab test result, dated October 5, 2015, printed on True Health letterhead, showing a test result for MPO. (Attached as Exhibit H.) Shortly thereafter, Cleveland Heartlab discovered two lab test results on HDL letterhead but dated after the asset purchase (October 3 and October 5, respectively).  (Attached as Exhibits I and J.)  These reports list the lab director as True Health COO and CSO Dr. Kent Mitchell and include testing for MPO.  Cleveland HeartLab then uncovered a fourth report dated October 19, 2015, on True Health Letterhead, listing an MPO test result. (Attached as Exhibit K.)  Cleveland HeartLab acquired a fifth report dated November 10, 2015, on True Health Letterhead, listing an MPO test result.  (Attached as Exhibit L.)

28.      Each of these lab reports includes an MPO risk range indicator.  Exhibit H lists a high-risk MPO threshold of 640 pmol/L, with an optimal MPO range of 83-640 pmol/L.  Exhibit I lists a high-risk MPO threshold of 400 pmol/L, an intermediate risk range of 321-399 pmol/L and optimal MPO range of 320 pmol/L.  Exhibit J lists a high-risk MPO threshold of 332 pmol/L, with an intermediate risk range of 256-331 pmol/L and optimal MPO range listed as below 255 pmol/L.  Exhibit K lists a high-risk MPO threshold of 557 pmol/L.  Exhibit L lists a

high-risk MPO threshold of 640 pmol/LX0D0 A, with an optimal MPO range of 83-640 pmol/LX0D0 A.  Notably, each of these reports denotes a different risk range and/or unit of measure for MPO, casting serious doubt on the quality and accuracy of True Health's MPO tests.

29.     Exhibits H, J, K and L include a patient blood sample MPO test result that is compared to the MPO risk threshold denoted for that test to determine CVD risk.

30.     True Health has purchased and commercially used MPO testing kits from Diazyme Laboratories.  Diazyme's testing kits are approved for research use only, not for commercial use.


### IV. COUNT I: INFRINGEMENT OF THE '552 PATENT

31.     Plaintiffs incorporate by reference herein the allegations of Paragraphs 1-30 of this Complaint.

32.     CCF is the owner of the '552 Patent entitled "Myeloperoxidase, A Risk Indicator For Cardiovascular Disease." The '552 Patent was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on May 29, 2007. Competitors have challenged the validity of the '552 Patent by filing two separate reexamination proceedings with the USPTO, Reexamination Request Nos. 90/009,501 and 90/009,744.  The '552 Patent is still in effect and is presumed valid under the U.S. patent laws. A copy of the '552 Patent with its associated reexamination certificates is attached as Exhibit A.

33.     True Health has been and still is directly infringing the '552 Patent under 35 U.S.C. § 271(a) by using MPO test kits and performing and/or selling MPO testing services that embody one or more claims of the '552 Patent. True Health will continue to infringe unless enjoined by this Court.

34.     True Health has knowingly and willfully infringed the '552 Patent.

35.     As a result of True Health's infringement of the '552 patent, CCF and Cleveland HeartLab have suffered monetary damages in an amount not yet determined, and will continue to suffer irreparable harm in the future unless True Health's infringing activities are enjoined by this Court.

36.     CCF and Cleveland HeartLab will be greatly and irreparably harmed unless preliminary and permanent injunctions are issued enjoining True Health and their agents, servants, employees, attorneys, representatives, and all others acting on their behalf from infringing the '552 patent.

V.    COUNT II: INFRINGEMENT OF THE '286 PATENT

37.     Plaintiffs incorporate by reference herein the allegations of Paragraphs 1-36 of this Complaint.

38.     CCF is the owner of the '286 Patent entitled "Assessing the Risk of a Major Adverse Cardiac Event in Patients with Chest Pain." The '286 Patent was duly and legally issued by the USPTO on December 2, 2008. The '286 Patent is still in effect and is presumed valid under the U.S. patent laws. A copy of the '286 Patent is attached as Exhibit B.

39.     True Health has been and still is directly infringing the '286 Patent under 35 U.S.C. § 271(a) by using MPO test kits and performing and/or selling MPO testing services that embody one or more claims of the '286 Patent. True Health will continue to infringe unless enjoined by this Court.

40.     True Health has knowingly and willfully infringed the '286 Patent.

41.     As a result of True Health's infringement of the '286 patent, CCF and Cleveland HeartLab have suffered monetary damages in an amount not yet determined, and will continue to suffer irreparable harm in the future unless True Health's infringing activities are enjoined by this Court.

42.     CCF and Cleveland HeartLab will be greatly and irreparably harmed unless preliminary and permanent injunctions are issued enjoining True Health and their agents, servants, employees, attorneys, representatives, and all others acting on their behalf from infringing the '286 patent.

## VI. COUNT III: INFRINGEMENT OF THE '581 PATENT

43.     Plaintiffs incorporate by reference herein the allegations of Paragraphs 1-42 of this Complaint.

44.     CCF is the owner of the '581 Patent entitled "Assessing the Risk of a Major Adverse Cardiac Event in Patients with Chest Pain." The '581 Patent was duly and legally issued by the USPTO on January 8, 2013. The '581 Patent is still in effect and is presumed valid under the U.S. patent laws. A copy of the '581 Patent is attached as Exhibit C.

45.     True Health has been and still is directly infringing the '581 Patent under 35 U.S.C. § 271(a) by using MPO test kits and performing and/or selling MPO testing services that embody one or more claims of the '581 Patent. True Health will continue to infringe unless enjoined by this Court.

46.     True Health has knowingly and willfully infringed the '581 Patent.

47.     As a result of True Health's infringement of the '581 patent, CCF and Cleveland HeartLab have suffered monetary damages in an amount not yet determined, and will continue to

suffer irreparable harm in the future unless True Health's infringing activities are enjoined by this Court.

48.     CCF and Cleveland HeartLab will be greatly and irreparably harmed unless preliminary and permanent injunctions are issued enjoining True Health and their agents, servants, employees, attorneys, representatives, and all others acting on their behalf from infringing the '581 patent.

VII.     COUNT IV: INFRINGEMENT OF THE '095 PATENT

49.     Plaintiffs incorporate by reference herein the allegations of Paragraphs 1-48 of this Complaint.

50.     CCF is the owner of the '095 Patent entitled "Myeloperoxidase, A Risk Indicator For Cardiovascular Disease." The '095 Patent was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on October 20, 2015. The '095 Patent is still in effect and is presumed valid under the U.S. patent laws. A copy of the '095 Patent is attached as Exhibit D.

51.     Upon information and belief, True Health has been and still is indirectly infringing the '095 Patent under 35 U.S.C. § 271(b) by actively inducing direct infringement by other persons practice one or more of the claims of the '095 patent.  True Health had knowledge of the '095 Patent and knew or should have known that its actions would induce direct infringement by others and intended that its actions would induce direct infringement by others. True Health will continue to infringe unless enjoined by this court.

52.     Upon information and belief, True Health has been and still is indirectly infringing the '095 Patent under 35 U.S.C. §271(c) by contributory infringement by providing

non-staple articles of commerce to others for use in an infringing method with knowledge of the '095 Patent and knowledge that these non-staple articles of commerce are used as a material part of the claimed inventions of the '095 Patent. True Health will continue to infringe unless enjoined by this court.

53.     True Health has knowingly and willfully infringed the '095 Patent.

54.     As a result of True Health's infringement of the '095 Patent, CCF and Cleveland HeartLab have suffered monetary damages in an amount not yet determined, and will continue to suffer irreparable harm in the future unless True Health's infringing activities are enjoined by this Court.

55.     CCF and Cleveland HeartLab will be greatly and irreparably harmed unless preliminary and permanent injunctions are issued enjoining True Health and their agents, servants, employees, attorneys, representatives, and all others acting on their behalf from infringing the '095 Patent.

VIII.     COUNT V: INFRINGEMENT OF THE '260 PATENT

56.     Plaintiffs incorporate by reference herein the allegations of Paragraphs 1-55 of this Complaint.

57.     CCF is the owner of the '260 Patent entitled "Myeloperoxidase, A Risk Indicator For Cardiovascular Disease." The '260 Patent was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on October 27, 2015. The '260 Patent is still in effect and is presumed valid under the U.S. patent laws. A copy of the '260 Patent is attached as Exhibit E.

58.     Upon information and belief, True Health has been and still is indirectly infringing the '260 Patent under 35 U.S.C. § 271(b) by actively inducing direct infringement by other persons who practice one or more of the claims of the '260 Patent.  True Health had knowledge of the '260 Patent and knew or should have known that its actions would induce direct infringement by others and intended that its actions would induce direct infringement by others. True Health will continue to infringe unless enjoined by this court.

59.     Upon information and belief, True Health has been and still is indirectly infringing the '260 Patent under 35 U.S.C. §271(c) by contributory infringement by providing non-staple articles of commerce to others for use in an infringing method with knowledge of the '260 Patent and knowledge that these non-staple articles of commerce are used as a material part of the claimed inventions of the '260 Patent. True Health will continue to infringe unless enjoined by this court.

60.     True Health has knowingly and willfully infringed the '260 Patent.

61.     As a result of True Health's infringement of the '260 Patent, CCF and Cleveland HeartLab have suffered monetary damages in an amount not yet determined, and will continue to suffer irreparable harm in the future unless True Health's infringing activities are enjoined by this Court.

62.     CCF and Cleveland HeartLab will be greatly and irreparably harmed unless preliminary and permanent injunctions are issued enjoining True Health and their agents, servants, employees, attorneys, representatives, and all others acting on their behalf from infringing the '260 Patent.

IX. <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs respectfully request the following relief:

A. A judgment that True Health has directly infringed and continues to infringe the '552 Patent;

B. A judgment that True Health's infringement of the '552 Patent has been willful;

C. A judgment against True Health awarding Plaintiffs damages suffered by Plaintiffs pursuant to 35 U.S.C. § 284 on account of True Health infringement of the '552 Patent;

D. A judgment that Plaintiffs' damages be trebled pursuant to 35 U.S.C. § 284 and that punitive damages be assessed against True Health;

E. Preliminary and Permanent Injunctions against True Health and any entity acting in concert with True Health, pursuant to 35 U.S.C. § 283, preventing True Health and any such entity, from infringing the '552 patent;

F. A judgment that True Health has directly infringed and continues to infringe the '286 Patent;

G. A judgment that True Health's infringement of the '286 Patent has been willful;

H. A judgment against True Health awarding Plaintiffs damages suffered by Plaintiffs pursuant to 35 U.S.C. § 284 on account of True Health infringement of the '286 Patent;

I. A judgment that Plaintiffs' damages be trebled pursuant to 35 U.S.C. § 284 and that punitive damages be assessed against True Health;

J.   Preliminary and Permanent Injunctions against True Health and any entity acting in concert with True Health, pursuant to 35 U.S.C. § 283, preventing True Health and any such entity, from infringing the '286 patent;

K.   A judgment that True Health has directly infringed and continues to infringe the '581 Patent;

L.   A judgment that True Health's infringement of the '581 Patent has been willful;

M.   A judgment against True Health awarding Plaintiffs damages suffered by Plaintiffs pursuant to 35 U.S.C. § 284 on account of True Health infringement of the '581 Patent;

N.   A judgment that Plaintiffs' damages be trebled pursuant to 35 U.S.C. § 284 and that punitive damages be assessed against True Health;

O.   Preliminary and Permanent Injunctions against True Health and any entity acting in concert with True Health, pursuant to 35 U.S.C. § 283, preventing True Health and any such entity, from infringing the '581 patent;

P.   A judgment that True Health has indirectly infringed by contributory infringement and/or inducement, and continues to infringe the '095 patent;

Q.   A judgment that True Health's infringement of the '095 Patent has been willful;

R.   A judgment against True Health awarding Plaintiffs damages suffered by Plaintiffs pursuant to 35 U.S.C. § 284 on account of True Health infringement of the '095 Patent;

S.   A judgment that Plaintiffs' damages be trebled pursuant to 35 U.S.C. § 284 and that punitive damages be assessed against True Health;

T.  Preliminary and Permanent Injunctions against True Health and any entity acting in concert with True Health, pursuant to 35 U.S.C. § 283, preventing True Health and any such entity, from infringing the '095 Patent;

U.  A judgment that True Health has indirectly infringed by contributory infringement and/or inducement, and continues to infringe the '260 Patent;

V.  A judgment that True Health's infringement of the '260 Patent has been willful;

W.  A judgment against True Health awarding Plaintiffs damages suffered by Plaintiffs pursuant to 35 U.S.C. § 284 on account of True Health infringement of the '260 Patent;

X.  A judgment that Plaintiffs' damages be trebled pursuant to 35 U.S.C. § 284 and that punitive damages be assessed against True Health;

Y.  Preliminary and Permanent Injunctions against True Health and any entity acting in concert with True Health, pursuant to 35 U.S.C. § 283, preventing True Health and any such entity, from infringing the '260 Patent;

Z.  A judgment that True Health be directed to pay Plaintiffs' attorney fees pursuant to 35 U.S.C. § 285 and costs incurred herein; and

AA.      Such other and further relief as the Court deems just and equitable.

## X.  DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. Rule 38(b), Plaintiffs respectfully demand a trial by jury of all issues triable as of right to a jury.

Dated: November 30, 2015

Respectfully submitted,

s/ Todd R. Tucker
Todd R. Tucker (0065617)
ttucker@calfee.com
Joshua Friedman (0091049)
jfriedman@calfee.com
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 E. 6th Street
Cleveland, Ohio  44114
(216) 622-8200 (Telephone)
(216-241-0816 (Facsimile)

Attorneys for Plaintiffs
Cleveland Clinic Foundation
Cleveland HeartLab, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2015 , a copy of the foregoing document was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system.


s/ Todd R. Tucker

One of the Attorneys for Plaintiffs